UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:14-cv-81589-RLR

ADT LLC,

    Plaintiff,

v.

TEAMTRONICS, INC., a Florida corporation, ALARM DIRECT INCORPORATED, a Florida corporation, A+ SECURITY INC., a Florida corporation, TOMMY NGUYEN, individually, DINO V. GERACCI, individually, ADVANCED DESIGN TECHNOLOGY SYSTEMS, INC., a Florida corporation, TOTAL CONNECT SOLUTIONS, LLC, a Wyoming limited liability company and KEVIN STEPHENS, individually,

    Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS TEAMTRONICS, ALARM DIRECT INCORPORATED AND TOMMY NGUYEN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff, ADT LLC ("ADT" or "Plaintiff"), through its attorneys, SHOOK, HARDY, & BACON, L.L.P. and pursuant to Local Rule 7.1(c), responds in opposition to Defendants TEAMTRONICS, INC. ("Teamtronics"), ALARM DIRECT INCORPORATED ("ADI"), and TOMMY NGUYEN's ("Nguyen") (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss") as follows:

I.   INTRODUCTION

ADT brought suit against Teamtronics, ADI and Nguyen to put an end to these Defendants' deceptive sales practices. In its Complaint, ADT alleges that Defendants obtained Confidential Information, such as customer information involving customer contracts, credit ratings, payment information and personal identification codes, and Defendants used that information to target ADT customers. Doc. 1, ¶¶ 20, 33, 71-2, 74-81, 90-1, 93 Defendants would make house calls to ADT customers under the guise that they were there to "upgrade" the customer's service and would mislead those customers into believing that Defendants were associated with ADT. *Id.*, ¶¶ 75-81, 92-93. In some instances, Defendants made blatantly false statements about ADT to ADT customers – namely, that ADT was exiting the security business and that ADT had changed its name to ADI. *Id.*, ¶¶ 81 and 93.

Defendants seek dismissal of all of the claims ADT asserted against them: violations of the Lanham Act (Counts V and IX), tortious interference with business relationships (Counts VI and X), misappropriation of trade secrets (Counts VII and XI), and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Counts VIII and XII). Defendant's Motion to Dismiss, however, fails to raise any arguments warranting dismissal of any of ADT's claims. First, Defendants inaccurately assume that ADT asserted a claim for trademark infringement under the Lanham Act, when, instead, ADT alleged claims for false advertisement and dilution. Because a different pleading standard applies to trademark infringement claims, none of Defendants' arguments have any relevance or merit with respect to the false advertisement and dilution claims asserted by ADT. Second, the tortious interference claim properly alleges that Defendants interfered with customers with whom ADT had existing contractual relationships. Additionally, both the tortious interference claims and the FDUTPA

claims are not preempted by the Florida Uniform Trade Secrets Act ("FUTSA") because those claims are based on actions that are unrelated to Defendants' misappropriation of trade secrets. Last, ADT has alleged valid trade secrets that are entitled to protection under the FUTSA.

Accordingly, Defendants' Motion to Dismiss should be denied, and none of ADT's claims against Defendants should be dismissed.

## II.   LEGAL STANDARD

"[T]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *Quality Foods de Centro Am. S.A. v. Latin Am. Agribusiness Develop. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983). To satisfy the pleading requirements of Fed.R.Civ.P. 8(a)(2), a complaint must contain only a short and plain statement showing an entitlement to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). F.R.C.P. 8(a)(2) does not require a plaintiff to "make detailed factual allegations". *Trustees of Hotel Indus. Pension Fund v. Carol Mgmt. Corp.,* 880 F.Supp. 1548, 1552 (S.D.Fla.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level"—setting forth a claim that is plausible—on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard is a liberal one with the emphasis placed on whether the complaint affords the defendant sufficient notice of what the claim is and its grounds. *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005).

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *Speaker v. U.S. Dept. of Health & Human Servs. For Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). The court must limit its review to the four corners of the

complaint, but it also may consider referenced documents which are central to the claims. *Brooks v. Blue Cross & Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997). When facts in a complaint are disputed, a district court cannot resolve the dispute at the pleading stage and a motion to dismiss must be denied. *Canadian Steel, Inc. v. HFP Capital Markets, LLC*, 2012 WL 2326119, at *10 (S.D. Fla. June 19, 2012).

### III. ARGUMENT

#### a. Counts V and IX properly allege Lanham Act violations.

ADT alleges two violations of the Lanham Act. Section 1125(a)(1) is the basis for the first of those violations, the false advertising claim, and Section 1125(c) is the basis for the second violation, the dilution claim. Section 1125(a)(1) states:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Claims under § 1125(a)(1)(A) are known as "false association" or "trademark infringement" claims, and claims under § 1125(a)(1)(B) are known as "false advertising" claims. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1385 (2014). ADT has alleged a claim for "false advertising" under § 1125(a)(1)(B) in Counts V and IX – not a claim for "false

4

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171

association" or "trademark infringement", as Defendants' Motion to Dismiss incorrectly assumes.

The second violation of the Lanham Act that ADT alleges is dilution under § 1125(c). Section 1125(c) states:

> the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

Contrary to Defendants' argument, dilution claims do not require a showing of actual or likely confusion.

i. <u>False Advertising</u>

None of the law that Defendants cited in the Motion to Dismiss applies to ADT's claim for false advertising. Rather,"[t]o state a claim for false advertising in violation of § 1125(a)(1)(B), a plaintiff must allege:

> (1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the [plaintiff] has been—or is likely to be—injured as a result of the false advertising.

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts Inc.,* 299 F.3d 1242, 1247 (11th Cir. 2002). ADT has alleged the "classic Lanham Act false-advertising claim" in which "one competitor[r] directly injur[es] another by making false statements about his own goods [or the competitor's goods] and inducing customers to switch." *Lexmark*, 134 S.Ct. at 1393, *quoting Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 799 n.24 (C.A.5 2011). Indeed, this Court recently found that ADT properly stated a claim for false advertising in similar case in which a competitor made false statements to ADT customers. *ADT LLC v. Vision Security, LLC*,

5

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171

2014 WL 3764152, *4-*5 (S.D. Fla. 2014).  Just as was the case in *ADT LLC v. Vision Security, LLC*, all of the factors of a § 1125(a)(1)(B) claim have been properly alleged.

First, oral statements to customers may constitute commercial advertisements subject to § 1125(a)(1)(B).  *ADT LLC*, 2014 WL 3764152 at *4; *Florida Breckinridge, Inc. v. Solvay Pharmaceuticals, Inc*., 1998 WL 468753 (S.D. Fla. 1998).   Second, the Complaint cites numerous examples of Defendants actually making false statements to ADT customers and causing those customers to contract with Teamtronics and ADI.  Doc. 1, ¶¶78-81, 93.  In one instance, the ADT customer directly asked Nguyen if the upgrade was with ADT.  *Id*., at ¶78.  He falsely replied yes, and the customer's service changed from ADT to a different company.  In another situation, Teamtronics falsely told an ADT customer that "ADT was exiting the security business and that Teamtronics would be taking over".  *Id*., ¶81.  ADI similarly is alleged to have told an ADT customer that ADT had changed its name to ADI.  *Id*., ¶93.  Given that these statements are "literally false", the Court may presume that the statements deceived or could have deceived customers.  *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010).  Third, ADT satisfied the materiality element by alleging that the deception "had a material effect on customers in that they unknowingly and/or unwittingly entered into contracts with security monitoring companies other than ADT, causing some customers to be billed twice, and causing cancellation of the customers' ADT contracts and ADT services." Doc. 1, ¶¶130, 159.  The specific examples of Defendants' deception also support the notion that their conduct had a material effect on the customers' purchasing decisions.  *Id*., ¶¶78-81, 93.  Fourth, ADT has been damaged.  ADT has lost customers as a result of Defendants' actions, and ADT's relationships with its customers have been damaged.  Doc. 1, ¶¶ 78-79, 81-83, 93-94, 130, 159. *Osmose*, 612 F.3d at 1298 (plaintiff alleged damages when advertisements reasonably threatened plaintiff's

"goodwill and market position"). Therefore, ADT has properly alleged a false advertisement claim under § 1125(a)(1)(B) of the Lanham Act.

                ii.      Dilution

ADT has also asserted a dilution claim under § 1125(c) of the Lanham Act. To prevail on a federal trademark dilution claim under § 1125(c) of the Lanham Act, a plaintiff must demonstrate that (1) its mark is famous, (2) the defendant adopted the mark after the plaintiff's mark became famous, (3) the defendant's mark diluted the plaintiff's mark, and (4) the defendant's use is commercial and in commerce. *Victoria's Cyber Secret, Ltd. v. V Secret Cataiogue, Inc.,* 161 F.Supp.2d 1339, 1354 (S.D.Fla.2001).

The only argument Defendants raise that is relevant to ADT's dilution claim is that the Complaint does not identify the marks at issue. However, the Complaint alleges that Defendants' improperly used ADT's trade name (i.e. "ADT") and provides Defendants with specific examples of how they improperly used ADT's trade name and logo. Doc. 1, ¶¶74-84, 92-94, 128-128, 156-159. This description is sufficient to put Defendants on notice of ADT's claims and to allow Defendants to respond accordingly. *Monster Daddy, LLC v. Monster Cable Products, Inc.*, 2007 WL 221403, *4 (D. S.C. 2007)(finding allegations that the sale of products labeled "MONSTER SCREENCLEAN and MONSTER ICLEAN" was sufficient identify trademarks are issue); *Suede Group, Inc. v. S Group, LLC*, 2013 WL 183752 (D. Kan. 2013); Riverdeep Interactive Learning, Ltd. v, MPS Multimedia, Inc., 2006 WL 3797962 (N.D. Cal. 2006). Indeed, this Court has previously taken judicial notice of ADT's claim to trademark rights in "ADT". *ADT LLC*, 2014 WL 3764152 at n. 1.

Defendants' misleading and unauthorized use of ADT's marks for their own gain is precisely the type of harm that trademark dilution seeks to prevent. *Delta Air Lines, Inc. v.*

7

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171

*Network Consulting Assoc.*, 2014 WL 4347839, *5-*6 (M.D. Fla. 2014)(finding the defendant's use of Delta's trademark in a letter suggested that Delta was associated with defendants' free ticket promotion and sufficiently alleged dilution). Because ADT sufficiently pled all facts necessary to sustain this claim, the Motion should be denied.

### b. ADT has properly alleged tortious interference with business relationships claims against Teamtronics, Nguyen and ADI.

None of Defendants' arguments with respect to ADT's claim for tortious interference with business relationships has any merit. To state a claim for tortious interference with business relationships, the Complaint must allege: "(1) the existence of a business relationship under which plaintiff has legal rights; (2) knowledge by the defendant of such a relationship; (3) an intentional and unjustified interference with such a relationship; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Man, Inc*., 647 So.2d 812, 815 (Fla. 1994). Each of Defendants' arguments with respect to ADT's tortious interference claim is discussed below.

### i. The Complaint properly alleges the business relationships that were interfered with.

Defendants first argue that the Complaint fails to identify a specific business relationship because "customers" is too vague. However, Florida courts have long-recognized that a claim for tortious interference with business relationships may be stated with regards to "present or prospective customers". *Ethan Allen*, 814. Indeed, "[a]t the pleading stage, it is not necessary to name the specific customers at issue so long as there are sufficient allegations concerning a business relationship that affords the claimant 'existing or prospective legal or contractual rights.'" *Drenberg v. Focus!....On Surety, LLC*, 2013 WL 6768667, *3 (M.D.Fla. Dec. 20, 2013), quoting *Ethan Allen, Inc*., 647So. 2d at 814. ADT has satisfied this pleading requirement by

8

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171

alleging existing contractual relationships with its customers. Doc. 1, ¶¶13, 17, 19, 33, 82-85, 92, 94, 135-137, and 164-167.

The main case upon which Defendants rely is *Bortell v. White Mountains Ins. Group, Ltd.*, 2 So.3d 1041 (DCA Fla. 4th 2009). However, that case is readily distinguishable. *Bortell* involved an insurance agent who alleged that his former employer interfered with a "finite group of marine clients" when the employer sought out those clients to renew their insurance policies. However, the plaintiff in *Bortell* had no existing agreement with the marine clients. Rather, they were all former clients under no obligation to continue doing business with the plaintiff.

ADT does not allege that Defendants interfered with prospective or past customers, as was the case with *Bortell*. *Bortell*, 2 So.3d at 1048-9. Rather, ADT alleges that Defendants interfered with customers that had ongoing existing contractual relationships with ADT; namely, ADT's Purchased Accounts. The Complaint alleges that authorized dealers would solicit customers and enter into contracts with them for installation services and equipment. Doc. 1, ¶13, 17, 19. Those contracts were then offered to ADT to purchase. *Id*. Each contract that ADT purchased was assigned to ADT ("Purchased Accounts"), and ADT is made the "service provider in direct privity of contract with the customer". *Id*., ¶¶ 13, 17, 18. The Complaint alleges that Teamtronics solicited "ADT customers that represented Purchased Accounts identified on customer lists". *Id*., ¶33. All of the Defendants are alleged to have used ADT customer lists to take over ADT accounts and to sell those accounts to competitors of ADT. *Id*., ¶¶ 70, 74, 87, 92. The Complaint also alleges that the customers who were interfered with were those who had "contractual relationships" with ADT. *Id*., ¶¶ 83-84, 94, 135-138, 164-166. Therefore, ADT has sufficiently identified the business relationships that Defendants interfered with. *Drenberg*, 2013 WL 6768667 at *3 (allegations that a company's unnamed customers

"cancelled" their bond purchases sufficiently described the business relationships interfered with); *Allegiance Healthcare Corp. v. Coleman*, 232 F.Supp. 2d 1329, 1336 (S.D. Fla. 2002)(business relationships were properly limited to customers that the defendant serviced); *Total Marketing Tech., Inc. v. Angel Medflight Worldwide Air Servs., LLC*, 2012 WL 33150, *2-*3 (M.D. Fla. 2012)("customers or prospective customers" were identifiable enough to survive dismissal).

          ii.   The Complaint properly alleges existing contractual relationships with customers.

When a contractual relationship is alleged, there is no need to allege "an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered," as the Motion to Dismiss contends. *Bowlin v. Ferguson*, 619 F.Supp. 2d 1225 (M.D. Fla. 2008)("[a]n actionable business relationship requires, if not a contract, at least an understanding between the parties that would have been completed"); *Ethan Allen*, 647 So.2d at 814 ("a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers").

Here, the Complaint alleges that Defendants interfered with ADT's contractual relationships with its existing customers and, therefore, satisfies this pleading requirement. *Deman Data Sys., LLC v. Schessel*, 2013 U.S. Dist. LEXIS 81851 (M.D. Fla. 2013). The Complaint generally alleges that Defendants' tortious interference caused ADT customers to terminate existing customer contracts with ADT and enter into new customer contracts with competitors of ADT. Doc. 1, ¶¶ 82, 94, 135-138, 164-167. Specific examples of customer agreements that were interfered with are also alleged. *Id*., ¶ 78, 79, 93. Therefore, ADT need not allege agreements that would have been completed but for Defendants' interference.

### iii. The FUTSA does not preempt the tortious interference claim.

Last, the FUTSA does not preempt ADT's tortious interference claims because there are material distinctions between the allegations of those claims and the misappropriation of trade secrets claims. The FUTSA preempts tort claims if the allegations of the misappropriation of trade secret claim *alone* make up the underlying wrong of the separate tort. *American Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F.Supp. 2d 1170, 1180-1 (M.D. Fla. May 10, 2005). *See also Allegiance Healthcare*, 232 F.Supp. 2d at 1335-6. In other words, only claims that have no material distinction from the FUTSA claim will be dismissed. *Id*.

Here, the interference claims are based on numerous actions aside from Defendants' misappropriation of ADT's secrets. Defendants are alleged to have used ADT's trade name to interfere with ADT's contractual relationships with its customers. Doc. 1, ¶74, 76-82, 93, 94, 135-138, 164-167. Teamtronics and Nguyen used sales tactics to mislead customers into believing that they were associated with ADT. *Id*., ¶¶74, 76-82. Additionally, Teamtronics and Nguyen are alleged to have interfered by making false statements that ADT was no longer in the security business and that Teamtronics would be taking over. *Id*., ¶81. ADI also told a customer that ADT had changed its name to ADI. *Id*., ¶93. Both the misuse of ADT's trade name and the false statements about ADT's business make the tortious interference claims materially distinct from the misappropriation of trade secrets claim and, therefore, remove the tortious interference claims from the scope of the FUTSA. *Allegiance Healthcare*, 232 F.Supp. 2d at 1335-6. Accordingly, Counts VI and X must not be dismissed.

### c. The Complaint properly alleges trade secrets that can serve as the basis of the misappropriation of trade secrets claims.

Defendants contend that Counts VII and XI must be dismissed because ADT's description of the trade secrets at issue is impermissibly vague. The Southern District of Florida addressed Defendants' argument last year and ultimately rejected it, stating "[u]nder the theory propounded by Defendants, to protect a trade secret in an action before the Court, the Plaintiffs would have to betray that secret…[and] if accepted, would render the entire concept of trade secrets meaningless." *NPA Assocs., LLC v. Lakeside Portfolio Mgmt., LLC*, 2014 WL 714812, *3 (S.D. Fla. 2014). Given the public nature of court filings, courts in Florida decline to require plaintiffs to provide detailed descriptions of the trade secrets at issue and prefer discovery as the appropriate avenue for that information. *Healthcare Appraisers, Inc. v. Healthcare FMV Advisors, LLC*, 2011 WL 4591960, *9 (S.D. Fla. 2011). Indeed, a plaintiff need only describe its trade secret with "reasonable particularity". *Treco Int'l S.A. v. Kromka*, 706 F.Supp.2d 1283, 1286 (S.D. Fla. 2010). *See also Levenger Co. v. Feldman*, 516 F.Supp.2d 1272, 1287 (S.D. Fla. 2007). On a motion to dismiss, the moving party must present <u>clear authority</u> that the trade secret alleged does not deserve trade secret protection. *Id. See also NPA Assocs., LLC*, 2014 WL 714812, at *3. Not only has ADT met its pleading burden, but Defendants have failed to provide clear authority that ADT's trade secrets fail as a matter of law.

Under Florida law, a trade secret is information that "(1) derives economic value from not being readily ascertainable by others and (2) is the subject of reasonable efforts to maintain its secrecy." Fla. Stat. §§ 688.002(4). ADT alleges that Defendants misappropriated ADT's Confidential Information and trade secrets. Doc. 1, ¶¶ 145, 174. "Confidential Information" is alleged to include "(i) the terms and conditions of the contract, including the date on which the

12

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171

term of the contract was to expire; (ii) the customer's credit rating; (iii) the customer's contact information; (iv) the customer's personal identification codes ("PICs") and (iv) the customer's credit card, bank account or other payment information" as well as "customer lists, customer account information and customer profiles". *Id*., ¶20, 141, 170.  ADT also alleges that Nguyen obtained access to the Security Trax software, which contained ADT customer information, such as "the expiration dates of ADT customer monitoring contracts and the type of equipment installed in the home", and Nguyen disclosed that information to Teamtronics.  *Id*., ¶35, 39, 61, 71-72.  ADI obtained access to Confidential Information such as "customer lists and customer PICs" through Nguyen.  *Id*., ¶91-92.  All of this information is alleged to have economic value from not being generally known, and factual allegations, such as Defendants' use of the information to target ADT customers, support that notion.  *Id*., ¶¶ 74-81, 90-93, 142, 171.  Additionally, ADT's requirement that Authorized Dealers agree to confidentiality provisions in the Authorized Dealer Agreement as well as the Settlement Agreement's prohibition against ADTS's and Stephens' disclosure of Confidential Information demonstrate ADT's efforts to protect the secrecy of its Confidential Information and trade secrets.  *Id*., ¶¶ 31, 42-43, 143, 172.  Therefore, ADT has sufficiently alleged the trade secrets at issue.

ADT has alleged significantly more detail than the trade secrets at issue in the case cited by Defendants, *Swiss Watch Intern., Inc. v. Movado Group, Inc*., 2001 WL 36270980 (S.D. Fla. 2001).  There, the Court found "customer lists" and "operational techniques and processes" to be too vague to allege trade secrets.  While the trade secrets at issue in this case include customer lists, customer lists are just one component of the Confidential Information ADT seeks to protect, and ADT has alleged details regarding the information in the customer lists.  Regardless, Florida courts routinely find that confidential information similar to what is alleged

in the Complaint satisfies the "reasonable particularity" pleading standard. *NPA Assocs.*, 2014 WL 714812 at *3 ("proprietary confidential information related to the mortgages, including names, addresses, social security numbers, and financial information of thousands of borrowers, as well as proprietary calculations, assessments, and/or formulas related to the investment viability" was sufficiently plead); *Treco Int'l*, 706 F.Supp. at 1286 ("confidential information on the development, structure and marketing of the xMax network" was described with "reasonable particularity"); *Allegiance Healthcare*, 232 F.Supp.2d at 1335 (denied dismissal of trade secrets identified as "customer lists, cost and profit margin information, and marketing and sales practices of Allegiance, as well as customer and buying habits and preferences"); *East v. Aqua Gaming, Inc.*, 805 So.2d 932, 934 (Fla. 2d DCA 2001)(customer list was a trade secret). Therefore, Defendants' Motion to Dismiss should be denied with respect to Counts VII and XI.

### d. The FUTSA does not preempt the FDUTPA claims.

Defendants' contention that the FUTSA ("Florida Uniform Trade Secrets Act") preempts the FDUTPA claims fails because the FDUTPA claims are not based on Defendants' misappropriation of trade secrets. Rather, the FDUTPA claims are based on separate wrongs – namely, Defendants' false representations that they were representatives of ADT, the concealment of their true affiliation with Teamtronics or ADI to mislead ADT customers, and false statements about ADT's business. Doc. 1, ¶¶ 152-153, 181-182. *See also American Registry, LLC v. Hanaw*, 2014 U.S. Dist. LEXIS 101158, *17 (M.D. Fla. 2014)("[t]he Court must review the underlying factual allegations in each of the remaining claims to determine if they are based on the misappropriation of information, and therefore displaced by the FUTSA.") As explained in Section b(iii) above, Defendants' misrepresentations are supported by factual

allegations documenting examples of Defendants' misrepresentations and efforts to mislead ADT customers. Doc. 1, ¶¶74-81, 92-94, 153, 182.

Defendants' reliance on *American Registry* is misplaced. In that case, the defendant was a former independent contractor who took his employer's confidential information and used that information to develop a competitor company, targeting his former employer's customers. *American Registry*, 2014 U.S. Dist. LEXIS 101158, *4-*5. The only factual allegations supporting the FDUTPA claim involved the use of the employer's confidential information. *Id*., at *17-*18. Consequently, the FUTSA preempted the FDUTPA claim. Unlike *American Registry*, ADT has alleged that Defendants have committed separate acts that constitute deceptive and unfair trade practices. Defendants misrepresented to ADT customers that: Defendants were representatives of ADT, ADT was exiting the security business, and ADT changed its name to ADI. Doc. 1, ¶ 77-78, 80-81, 93. Additionally, Nguyen is alleged to have trained Teamtronics representatives to lead ADT customers to believe that the Teamtronics representatives were with ADT and on the customer's premises to "upgrade" the alarm equipment. *Id*., ¶76. Indeed, Defendants could have made these misrepresentations to ADT customers without misappropriating ADT's confidential information. All of these factual allegations more than sufficiently take ADT's FUDPTA claims outside of the purview of FUTSA's preemption provision. Therefore, ADT has properly stated claims under the FUDPTA.

## CONCLUSION

For the reasons explained above, all of ADT's claims against Defendants Teamtronics, Nguyen and ADI should survive their Motion to Dismiss. Should the Court agree with

15

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 3200, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171

Defendants with respect to any of the claims, ADT requests that this Court grant ADT leave to amend the Complaint to address any pleading deficiencies.

Dated this  20th  day of February, 2015.

> Respectfully submitted,
>
> SHOOK, HARDY & BACON L.L.P.
> Miami Center, Suite 3200
> 201 S. Biscayne Blvd.
> Miami, Florida 33131-4332
> Telephone: 305-358-5171
> Facsimile: 305-358-7470
>
> By: /s/ *Humberto H. Ocariz*
>     Humberto H. Ocariz
>     E-mail: hocariz@shb.com
>     Florida Bar No: 740860
>
> *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants Teamtronics, Alarm Direct Incorporated and Tommy Nguyen's Motion to Dismiss was served by email, on this  20th  day of February, 2015, on all counsel or parties of record on the service list.

> /s/ *Humberto H. Ocariz*
>     Humberto H. Ocariz